UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BARBARA L. EVERETT,

               Petitioner,

                                              CASE NO. 06-15383
v.                                             HONORABLE MARIANNE O. BATTANI

CLARICE STOVALL,

               Respondent.
_____/

## **OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

Petitioner Barbara L. Everett has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for second-degree murder. Respondent urges the Court to deny the petition on the grounds that Petitioner's claims are procedurally defaulted, are not cognizable on habeas review, or lack merit. The Court agrees. Accordingly, the habeas petition must be denied.

**I. Background**

Petitioner was charged with open murder for stabbing Edward White to death. On November 20, 2003, a circuit court jury in Genesee County, Michigan found Petitioner guilty of second-degree murder. *See* Mich. Comp. Laws § 750.317. The trial court sentenced Petitioner to imprisonment for twenty to fifty years. The Michigan Court of Appeals affirmed Petitioner's conviction, *see People v. Everett*, No. 253303, 2005 WL 1875582 (Mich. Ct. App. Aug. 9, 2005), and on December 28, 2005, the Michigan Supreme Court denied leave to appeal, *see*

*People v. Everett*, 474 Mich. 989; 707 N.W.2d 349 2005).[1]

Petitioner filed her habeas corpus petition on December 4, 2006. Her claims read:

I. Defendant was denied a fair trial by the prosecutor's closing arguments that defense counsel had created a fantasy defense.

II. The sentencing court erred reversibly by denying Defendant's challenge to the scoring of OV-9, holding that multiple victims were placed in danger of injury or loss of life.

## II. The Facts

The Michigan Court of Appeals summarized the facts leading to Petitioner's conviction as follows:

> Everett lived with her boyfriend, Jerome Updite; her father, Eddie Hussey; her father's long-term companion, Gloria Brewer; and Brewer's brother and son. [Edward] White [the victim] was a friend of Brewer's son and an occasional visitor to the residence. The incident began on the evening of November 25, 2002, when Brewer and Hussey got into an argument. Both Updite and Everett believed Brewer had hit Hussey in the head with his own cane during the argument, although Brewer denied this. Everett told Brewer to give her the cane, and they began to fight when Brewer refused. Brewer backed into the kitchen to escape Everett, and Everett attempted to stop Brewer from getting a knife. Brewer then hit Everett on the head and ran to a neighbor's house, but the neighbor was not home.
>
> When Brewer returned, Everett and Updite, who was wielding a large iron lamp, confronted her on the front porch. Brewer testified that Everett was hitting her and Updite was pushing the lamp at her, which caused her to fall off the porch. At this point, White, who was walking down the street, saw Brewer fall and came to her aid. White asked Updite why he jumped on Brewer, and as Updite pushed White away, the police arrived on the scene. White told the responding officer that the people in the house had pushed Brewer off the porch. The officer testified that White, who did not appear hostile, attempted to confront Updite about assaulting Brewer, but left the scene when asked to do so, as did Brewer. However, both Brewer and White returned to the house shortly thereafter.
>
> When White returned, he appeared angry, and went upstairs to confront

---

[1] Justice Marilyn Kelly voted to grant leave to appeal.

Updite. Everett followed White to Updite's room and saw Brewer standing in the doorway and saw White standing over Updite, who was laying on the bed. Everett told White to leave Updite alone. Updite testified that after Everett arrived, he heard Brewer offer White a barber's straight razor. According to Updite, White took the razor and lunged toward Everett with it, at which point Everett stabbed White.

However, Everett's statement to the police indicated that she did not see White with a weapon, and Brewer testified that she did not give White the razor until after Everett stabbed him. Everett told the investigating officer that she approached White with a knife in her hand, again told him to leave, and then reached out and stabbed him once. Everett's statement to the police did not describe any assaultive behavior on White's part, but rather indicated that she stabbed White because he wouldn't leave her room. Brewer testified that she heard White say, "you done stabbed me," and heard Everett say, "I didn't mean to stab him." Everett's statement also indicated that she saw Brewer hand White the razor after she stabbed him.

An autopsy revealed that White was stabbed in the right upper chest, puncturing his aorta. The pathologist testified that White had almost no chance of surviving this wound. White also received a stab wound under his arm that pierced his lung.

*Everett*, 2005 WL 1875582, at *1-2.

## III. Standard of Review

Petitioner is entitled to the writ of habeas corpus if she can show that the state court's adjudication of her claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)(emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). In addition, "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

**IV. Discussion**

    **A. The Prosecutor**

Petitioner contends that the prosecutor's closing arguments focused on defense counsel instead of the evidence and that the prosecutor deprived her of a fair trial when he stated that

4

defense counsel had created a fantasy defense.

## 1. The Procedurally Defaulted Claims

Respondent argues that Petitioner's prosecutorial-misconduct claim is procedurally defaulted. A procedural default is "a critical failure to comply with state procedural law . . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Federal habeas courts may not consider a state prisoner's procedurally defaulted claim "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants to make timely and specific objections at trial in order to preserve their claims for appellate review. *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Petitioner did not object at trial to the prosecutor's characterization of the defense theory as fiction or a fantasy defense. The Michigan Court of Appeals therefore reviewed Petitioner's claim for plain error and concluded that plain error did not occur with respect to the "fantasy defense" comments.[2]

---

[2] In reaching this conclusion, the Michigan Court of Appeals wrote:

> [T]he contested comments were juxtaposed with a thorough examination of the facts as they related to the crime charged and Everett's theory of self-defense or defense of others. The prosecutor did not call defense counsel a liar, but questioned the validity of Everett's theory of the case given the facts, including Everett's confession. The prosecutor is not required to make an argument in the blandest possible terms. Further, the trial court properly instructed the jury on the burden of proof and explained that the lawyers' statements and arguments are not

A state appellate court's review for plain error constitutes enforcement of a state procedural rule, *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001), and the contemporaneous-objection rule was an adequate and independent state ground for denying relief because the rule was in effect long before Petitioner's trial. Therefore, in order for this court to consider the substantive merits of Petitioner's procedurally defaulted claims, she must establish "cause and prejudice" or a "miscarriage of justice."

Petitioner has not offered any argument in support of a finding of "cause" for the failure to object at trial or prejudice from the claimed error. The Court therefore deems the "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003).

The narrow exception for fundamental miscarriages of justice requires a habeas petitioner to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v Carrier*, 477 U.S. 488, 496 (1986). "To be credible, such a claim requires [the] petitioner to support [her] allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted [her] in the light of the new evidence." *Id.* at 327.

Petitioner has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur from the Court's failure to consider Petitioner's

---

evidence. Accordingly, Everett has failed to establish that plain error occurred with respect to these comments.

*Everett*, 2005 WL 1875582, at *2.

claim concerning the prosecutor's remarks about the fictitious or fantasy defense.

## 2. The Preserved Claims

Petitioner's remaining claims about the prosecutor focus on the comments that the defense was not an honestly held defense and that defense counsel could not "escape the window of truth."[3] Petitioner objected to both of these remarks. Thus, Petitioner's claims about these

---

[3] The Michigan Court of Appeals construed Petitioner's claim about the latter remark to include a challenge to the following argument, not just the remark about the window of truth:

> Ladies and gentlemen, I submit to you that the defense attorney is the James Brown of the legal profession, he is the hardest working man in the law. He's got to explain why everyone's wrong and everyone is bad but his client. And the reason he has to work hard is because he has a guilty client. In order to try to make that guilty client look innocent he has to work with these facts that are against him and do the best he can and he is doing a good job, but he cannot escape the window of truth. That short period of time between when this happened and before the wheels started turning in the defendant's mind as to what should I say to try to get away with this.

(Tr. at 647-48.)

The Michigan Court of Appeals was "troubled" by the comment that defense counsel had a guilty client. To the extent that Petitioner's habeas claim includes an objection to the prosecutor's comment about defense counsel's "guilty client," the Court agrees that the comment was improper. Prosecutors may not express a personal belief in the defendant's guilt. *See United States v. Young*, 470 U.S. 1, 9 (1985). Such "assurances of guilt . . . exceed[] the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds as explained in Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000).

Despite the impropriety of the remark, it was made during the prosecutor's rebuttal argument when he was entitled to "wide latitude." *Angel v. Overberg*, 682 F.2d 605, 607 (6th Cir. 1982). As the Michigan Court of Appeals recognized, the prosecutor was relying on the evidence, not "the prestige of his office or the existence of special knowledge of Everett's truthfulness." *Everett*, 2005 WL 1875582, at *3. Moreover, the trial court sustained defense counsel's objection and later instructed the jurors that the attorneys' arguments were not evidence, but a means to help the jurors understand the attorneys' points of view and theories. For these reasons, as well as the strength of the admissible evidence, the remark did not deprive

7

prosecutorial remarks are not procedurally defaulted.

The Sixth Circuit "has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument," *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001), for "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). To prevail on her claim, Petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 1376 (2007), and "'so egregious as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

### a. "[T]his isn't an honestly held defense."

The prosecutor's remark that the defense was not an honestly held one insinuated that defense counsel was not being honest with the jurors. Prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *Young*, 470 U.S. at 9, but they may demonstrate the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). The context of the prosecutor's remarks demonstrates that he was highlighting the inconsistencies or inadequacies of the defense. This was proper. *Bates v. Bell*,

---

Petitioner of a fair trial.

402 F.3d 635, 646 (6th Cir. 2005)

Even if the Court were to conclude that the prosecutor's remark was improper, it was not egregious. The trial court sustained defense counsel's objection to the remark, and the prosecutor then stated that there was no evidence to support the defense of self defense and defense of others. This was an acceptable argument based on the evidence.

### b. "[H]e cannot escape the window of truth"

As for the remark about the "window of truth," the prosecutor justified the remark by explaining that he was not insinuating dishonesty on the part of defense counsel. Instead, he was "merely commenting on the window of opportunity to get the real truth from the defendant." He defined the "window of truth" as the point in time when Petitioner confessed to the police, *i.e.*, the short period of time between the crime and Petitioner's attempt to avoid responsibility for the crime. (Tr. at 648.)

There is little likelihood that the remark misled the jury, because the evidence against Petitioner was substantial. She admitted to the police in a confession, which was described to the jurors, that she stabbed Mr. White, that she did not see a weapon on him, and that her reason for doing so was that he would not leave her room and she did not know what else he might do. It was acceptable for the prosecutor to "argue that the jury should arrive at a particular conclusion based on the record evidence, including the conclusion that the evidence prove[d] the defendant's guilt." *Caldwell*, 181 at 737.

The Court concludes that the prosecutor's remark about the window of truth was not improper. The remark about the defense not being an honestly held one arguably was proper because it merely highlighted inadequacies in the defense theory.

9

The jury likely convicted Petitioner of second-degree murder rather than voluntary manslaughter because of the strength of the evidence against her and not the prosecutor's comments. Therefore, even if the prosecutor violated Petitioner's constitutional rights, the errors could not have had "a substantial and injurious effect or influence" on the jury's verdict and were harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

### B. The Sentence

Petitioner's second and final claim alleges that the trial court abused its discretion by denying Petitioner's challenge to the scoring of the state sentencing guidelines. According to Petitioner, the trial court incorrectly concluded that Petitioner placed multiple victims in danger of injury or loss of life. According to Petitioner, there was no evidence to support this finding. She states that she did not threaten anyone and that the individuals' mere presence in the same room as a knife did not make them victims.

Petitioner relies entirely on state law to support her claim. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)).

Furthermore, questions of state sentencing law, and the proper interpretation of state sentencing guidelines are not cognizable on federal habeas corpus review. *Miller v. Vasquez,* 868 F.2d 1116, 1118-19 (9th Cir. 1989); *Whitfield v. Martin*, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001) (Tarnow, J.). As succinctly explained by the Sixth Circuit,

> [a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only. *Travis v. Lockhart,* 925 F.2d

10

> 1095, 1097 (8th Cir.1991); *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

*Howard v. White*, 76 Fed. Appx. 52, 53, 2003 WL 22146139, at **2 (6th Cir. Sept. 16, 2003) (unpublished). Because Petitioner has not alleged a violation of federal law, she has no right to relief on her sentencing claim.

## V. Conclusion

The state appellate court's conclusions did not result in an unreasonable determination of the facts. Nor did the state court's rejection of Petitioner's claims result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the Petition for Writ of Habeas Corpus [Doc. 1, Dec. 4, 2006] is **DENIED**.

                                                   s/Marianne O. Battani
                                                    MARIANNE O. BATTANI
                                                    UNITED STATES DISTRICT JUDGE

Dated: 2/06/08